```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
ALEKSEY RASPOUTNY                       :

                                        :       OPINION & ORDER
              Petitioner,
                                        :       23 Civ. 3823 (GWG)
       -v.-
                                        :

THOMAS DECKER et al.,                   :

                                        :
              Respondents.
---------------------------------------------------------------X
```

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Petitioner Aleksey Raspoutny brings this petition for a writ of habeas corpus under 28 U.S.C. § 2241 challenging his detention by United States Immigration and Customs Enforcement ("ICE"), a division of the United States Department of Homeland Security ("DHS").[1] The petition for a writ of habeas corpus is granted to the extent set forth below.

I. BACKGROUND

    A. Factual Background

Raspoutny is a citizen of Ukraine who first entered the United States in October 1994 as a "nonimmigrant visitor for tourism." Tedesco Decl. ¶ 4. Although his visa permitted him to stay in the United States only until April 1995, id., Raspoutny has lived in the United States ever

---

[1] See Petition for Writ of Habeas Corpus, filed May 8, 2023 (Docket # 1) ("Pet"); Amended Petition for Writ of Habeas Corpus, filed May 24, 2023 (Docket #3) ("Am. Pet."); Return to Habeas Petition, filed Aug. 1, 2023 (Docket # 23) ("Ret."); Declaration of Deportation Officer Michael Tedesco, filed Aug. 1, 2023 (Docket # 24) ("Tedesco Decl."); Memorandum of Law in Opposition, filed Aug. 1, 2023 (Docket # 25) ("Opp."); Reply, filed Aug. 17, 2023 (Docket # 26) ("Pet. Reply"); Letter, filed Sept. 22, 2023 (Docket # 31) ("Supp. Letter"); Declaration of Deportation Officer Brenda Sloan, dated Sept. 19, 2023 (attached to Supp. Letter) (Docket # 31-1) ("Sloan Decl.").

since, Am. Pet. ¶ 1.

Raspoutny was arrested numerous times in New Jersey beginning in 1999 and continuing until 2005, which resulted in several periods of imprisonment, community service and/or fines. See Tedesco Decl. ¶¶ 5-15; Opp. at 5-6.  On August 26, 2011, a Petition for Alien Relative (Form I-130) was filed with United States Citizenship and Immigration Services ("USCIS"), naming Raspoutny as a beneficiary, and Raspoutny filed an Application to Register Permanent Residence or Adjust Status (Form I-485) on the same day.  Tedesco Decl. ¶ 16.  On December 29, 2011, USCIS approved the Petition for Alien Relative and denied the Application to Register Permanent Residence or Adjust Status.  Id.

Importantly for this case, Raspoutny was arrested in New York City on February 3, 2022, and charged with assault in the second degree, N.Y. Penal Law ("N.Y.P.L.") § 120.05(2); assault in the third degree, N.Y.P.L. § 120.00(1); and criminal possession of a weapon in the fourth degree, N.Y.P.L. § 265.01(1).  Tedesco Decl. ¶ 17.  On April 12, 2022, while out on bail on the New York charges, Am. Pet. ¶ 20, Raspoutny was arrested in Pennsylvania and charged with aggravated assault, 18 Pa. Cons. Stat. § 2702(a)(3); simple assault, 18 Pa. Cons. Stat. § 2701(a)(3); harassment, 18 Pa. Cons. Stat. § 2709(a)(1); resisting arrest, 18 Pa. Cons. Stat. § 5104; public drunkenness, 18 Pa. Cons. Stat. § 5505; criminal mischief, 18 Pa. Cons. Stat. § 3304; reckless endangerment, 18 Pa. Cons. Stat. § 2705; and disorderly conduct, 18 Pa. Cons. Stat. § 5503(a)(1).  Tedesco Decl. ¶ 18.  Raspoutny was detained at Pike County Correctional Facility in Pennsylvania.  Id. ¶ 19; Am. Pet. ¶ 20.  On April 13, 2022, ICE interviewed Raspoutny and later that day lodged an immigration detainer (Form I-247A) with Pike County Correction Facility.  Tedesco Decl. ¶ 19.

On May 26, 2022, the New York State Supreme Court issued a "retainer warrant," directing that Raspoutny be brought back to New York following his release from Pike County Correctional Facility. Am. Pet. ¶ 20. On June 23, 2022, Raspoutny was convicted, upon a guilty plea, of two of the Pennsylvania charges, resisting arrest and criminal mischief. Tedesco Decl. ¶ 18. On August 12, 2022, he was sentenced to "between four and 23 months of imprisonment" and was ordered to pay $1,197.79 in restitution. Tedesco Decl. ¶ 18.[2]

On September 15, 2022, Raspoutny was transported back to New York by two investigators from the New York County District Attorney's Office ("DANY") to attend a proceeding in the New York State Supreme Court in New York County relating to his New York charges. Am. Pet. ¶ 20. Raspoutny's proceeding was before the Honorable April Newbauer and took place in Part 51 of the New York State Supreme Court in New York County. Am. Pet. ¶ 20; Tedesco Decl. ¶ 20. At the proceeding, the Assistant District Attorney ("ADA") "made an application pursuant to C.P.L. § 530.60 for the court to increase Mr. Raspoutny's bail and order that he remain incarcerated pending trial on his New York City charges." Am. Pet. ¶ 20. This request required additional documentation that the ADA did not have at the time, and Justice Newbauer ordered Raspoutny "be remanded to the custody of the New York City Department of Correction [] for one week, until September 22, 2022, to hold the requisite bail modification hearing, and to give [the] ADA [] an opportunity to prepare for the hearing." Am. Pet. ¶ 21.

Following the hearing, the DANY investigators escorted Raspoutny — accompanied by his defense attorney, Sonia Roubini — from the courtroom to the New York City Department of

---

[2] While the amended petition gives "August 12, 2022" as the date of the plea, Am. Pet. ¶ 20, this date conflicts with the information on Raspoutny's "RAP sheet," see Ex. 1 to Ret. (Docket # 23-1), at 14-15.

3

Correction ("NYDOC") entrance on the first floor of 100 Centre Street. Am. Pet. ¶ 22. According to Raspoutny, the following transpired: (1) the DANY investigators informed Roubini that Raspoutny would be booked into NYDOC custody and that Roubini could speak with Raspoutny the following day at Rikers Island, id.; (2) the DANY investigators attempted to hand custody over to NYDOC, but NYDOC asserted it did not have authority to take him, id.; (3) the DANY investigators then transported Raspoutny to the New York City Police Department ("NYPD") room on the first floor of 100 Centre Street, where they were informed by an NYPD sergeant that Raspoutny was the subject of an ICE detainer, id. ¶¶ 22-23; (4) NYPD called ICE, informing them that Raspoutny was at the courthouse and that the DANY investigators and NYPD would detain him until ICE arrived, id. ¶ 23; and (5) the DANY investigators and NYPD handed Raspoutny "over to two uniformed ICE officers" when they arrived at 100 Centre Street, id. Raspoutny has not contested that the DANY investigators transferred him to ICE custody outside the courthouse on a public street, and that ICE agents "did not enter any courthouse or interact with any court personnel." Tedesco Decl. ¶ 20; Opp. at 7.

At approximately 3:00 p.m., ICE transported Raspoutny to 26 Federal Plaza, New York, New York, where it served him with a Notice to Appear, charging that Raspoutny was removable pursuant to 8 U.S.C. § 1227(a)(1)(B). Tedesco Decl. ¶ 21; Am. Pet. ¶ 24. After determining that Raspoutny was not subject to mandatory detention under 8 U.S.C. § 1226(c), ICE served Raspoutny with a Notice of Custody Determination, notifying him that he would be detained by ICE and could request review of this decision by an Immigration Judge ("IJ"). Tedesco Decl. ¶ 21. Raspoutny was transported to Moshannon Valley Processing Center in Philipsburg, Pennsylvania. Tedesco Decl. ¶ 21. The following day, on September 16, 2022, ICE began removal proceedings against Raspoutny. Id. ¶ 22.

4

On or about September 23, 2022, pursuant to a writ of habeas corpus ad prosequendum signed by Justice Newbauer, Writ, annexed as Ex. 5 to Ret. (Docket # 23-5) ("Writ"), DANY investigators took custody of Raspoutny and brought him to New York for the continued proceeding on his pending New York charges.[3]  Tedesco Decl. ¶ 23; Am. Pet. ¶ 26.  Raspoutny appeared before Justice Newbauer and was remanded to NYDOC pending resolution of his state bail hearing.  Am. Pet. ¶ 27.  Raspoutny remained in NYDOC custody during the resolution of his New York charges.  See Am. Pet. ¶¶ 28-31.  On October 26, 2022, ICE moved to administratively close Raspoutny's immigration court proceeding given it was uncertain when Raspoutny would be returned to ICE custody.  Tedesco Decl. ¶ 25.

On January 19, 2023, Raspoutny pleaded guilty to third degree misdemeanor assault, N.Y.P.L. § 120.00(2), and was sentenced to one year of incarceration.  Am. Pet. ¶ 31.  On April 24, 2023, Raspoutny filed suit in the Supreme Court for the State of New York for the County of Bronx, alleging that ICE's arrest violated the New York Protect Our Courts Act, N.Y. Civ. Rights Law § 28(1)-(3), and sought an order that would prevent him from returning to ICE custody following his release.  Am. Pet. ¶ 32.  A state court judge ruled that regardless of whether the arrest violated New York law, the court could not provide the remedy of preventing his return to ICE custody.  Id.

On May 8, 2023, Raspoutny finished serving his sentence and was returned to ICE custody.  Id. ¶ 33; Tedesco Decl. ¶ 26.  That same day, Raspoutny filed his original petition for

---

[3] Raspoutny indicates this occurred on September 21, 2022, see Am. Pet. ¶ 26, while the Government states it was on September 23, 2022, see Tedesco Decl. ¶ 23.  Because the writ of habeas corpus ad prosequendum states that ICE should "release the defendant Aleksy Raspoutny on September 23, 2022 into the custody of investigators employed by the New York County District Attorney's Office," Writ, we assume the Government is correct.

habeas corpus in this case.  See Pet.  At the time of filing, Raspoutny was detained at the Anna M. Kross Center at Rikers Island, but "was shortly thereafter transferred to the Moshannon Valley Processing Center in Philipsburg, PA."  Am. Pet. ¶ 33; see Tedesco Decl. ¶ 26.  Raspoutny has since been detained by ICE pursuant to 8 U.S.C. § 1226(a).  Tedesco Decl. ¶ 21.  Raspoutny filed an amended petition on May 24, 2023.  See Am. Pet.

Several days later, on May 30, 2023, Raspoutny filed a motion for custody redetermination (that is, a "bond hearing") before ICE.  Tedesco Decl. ¶ 28.  After filing a request for an extension to prepare, on June 1, 2023, Raspoutny withdrew his request for a bond hearing.  Id. ¶¶ 29-30.  On June 13, 2023, Raspoutny appeared for a master calendar hearing and stated that he planned to file a motion to terminate removal proceedings, and his case was adjourned until July 5, 2023.  Id. ¶ 31.  The motion was filed on June 14, 2023, id. ¶ 32, the Government's response was filed June 20, 2023, id. ¶ 33, and the IJ denied the motion to terminate removal proceedings on July 5, 2023, id. ¶ 34.

On August 4, 2023, after the Government filed its opposition in the instant action, Raspoutny renewed his request for a bond hearing.  Sloan Decl. ¶ 6.  On August 7, 2023, Raspoutny filed an application for "asylum, withholding of removal, and protection under the Convention Against Torture" (Form I-589).  Id. ¶ 7.  Raspoutny's bond hearing was held on August 9, 2023, and the IJ ruled that he had failed to show that he was not a danger to the community.  Id. ¶ 8.  Raspoutny did not appeal this decision to the Board of Immigration Appeals ("BIA").  Id.

B. Procedural Background

The Government filed its opposition to the amended petition on August 1, 2023.  See Opp.  Raspoutny filed a reply on August 17, 2023.  See Pet. Reply.  Because Raspoutny

requested and received a bond hearing after the Government filed its opposition, and because new arguments were raised in the petitioner's reply brief, the Court ordered the Government to address any new arguments that had been made in the reply brief.  See Order, filed Sept. 13, 2023 (Docket # 30).  The Government filed a letter on September 22, 2023, see Supp. Letter, which attached a declaration from Deportation Officer Brenda Sloan addressing the status of Raspoutny's ICE proceedings, see Sloan Decl.

The parties consented to the disposition of this petition by the undersigned pursuant to 28 U.S.C. § 636(c).  See Consent to Jurisdiction, filed Sept. 8, 2023 (Docket # 29).

## II.  GOVERNING LAW

8 U.S.C. § 1226(a) provides that "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."  Section 1226(a) gives the Attorney General the choice to "continue to detain the arrested alien," or "release the alien on (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or (B) conditional parole."  The Attorney General has delegated this authority to immigration judges.  See 8 C.F.R. §§ 1003.19, 1236.1.  As interpreted by the BIA, "[s]ection 1226 provides for the release on bond for all persons — except those subject to mandatory detention as criminals or terrorists, or those who are arriving aliens — unless there is a finding that the alien is either a threat to the public safety, a threat to national security, or is likely to abscond."  Jimenez v. Decker, 2021 WL 826752, at *5 (S.D.N.Y. Mar. 3, 2021) (citing Matter of Patel, 15 I. & N. Dec. 666 (B.I.A. 1976)).

Section 1226(a) is silent as to whether the Government or the alien bears the burden of proof.  "Beginning in 1999, the BIA began placing the burden on the arrested individual to demonstrate, to the satisfaction of the arresting officer, that release would not pose a danger to

property or persons and that the individual is likely to appear for any future proceedings . . . conducted by immigration judges under § 1226(a)." Jimenez, 2021 WL 826752, at *5. The BIA's decision in Matter of Adeniji, 22 I. & N. Dec. 1102 (B.I.A. 1999), adopted the standard set forth in 8 C.F.R. § 236.1(c)(8), which allows "[a]ny officer authorized to issue a warrant of arrest" to instead release an alien pending removal proceedings, if that alien "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that [he] is likely to appear for any future proceeding." The BIA continues to require that, at an immigration bond hearing, the detainee bear the burden of proving "that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight." Matter of Siniauskas, 27 I. & N. Dec. 207, 207 (B.I.A. 2018).

Under BIA precedent, "'[a]n [IJ] has broad discretion in deciding the factors that he or she may consider in custody redeterminations,' including evidence of crimes for which Petitioner was not convicted." Reyes v. King, 2021 WL 3727614, at *4 (S.D.N.Y. Aug. 20, 2021) (quoting Matter of Guerra, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)); see also 8 C.F.R. § 1003.19(d) ("The determination of the [IJ] as to custody status or bond may be based upon any information that is available to the [IJ]."). An alien may appeal an unfavorable custody decision to the BIA. See 8 C.F.R. §§ 236.1(d)(3), 1236.1(d)(3).

III. DISCUSSION

Raspoutny seeks to be released from ICE custody, or, in the alternative, he seeks a bond hearing where "the [G]overnment should be required to prove the need for continued detention by clear and convincing evidence."[4] Am. Pet. ¶ 5. In support of his release, Raspoutny argues

---

[4] In his amended petition, Raspoutny argued that he "will presumptively be denied a bond hearing pursuant to 8 U.S.C. § 1226(c)." Am. Pet. ¶ 51. As the Government pointed out,

that his "apprehension and detention by ICE from a New York Courthouse in the midst of a state court proceeding constitutes a violation of the Due Process Clause of the Fifth Amendment to the U.S. Constitution, the Petition Clause of the First Amendment to the Constitution, the common-law privilege against civil arrest at a courthouse, the Administrative Procedure Act, the Department of Homeland Security's own courthouse arrest directive, and the New York Protect Our Courts Act." Am. Pet. ¶ 3; Pet. Reply at 17-20. In support of his request for a new bond hearing, Raspoutny argues that the Due Process Clause, the Immigration and Nationality Act ("INA"), and the Administrative Procedure Act, 5 U.S.C. §§ 551 et seq. ("APA"), require a new bond hearing where the burden of proving continued detention is placed on the Government. See Am. Pet. ¶ 5; Pet. Reply at 20-25.

The Government opposes both of these arguments. See Opp.; Supp. Letter at 1-2. We first address the courthouse arrest issue. Because we conclude that petitioner is not entitled to habeas relief based on this argument, we next address whether he is entitled to a bond hearing at which the Government will bear the burden of proof.

A. Courthouse Arrest

A court may grant a writ of habeas corpus under 28 U.S.C. § 2241 where a prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." See 28 U.S.C. § 2241(c)(3). Section 2241 permits a federal court to review "purely legal statutory and constitutional claims" regarding immigration proceedings, but jurisdiction "does not extend to review of discretionary determinations by the IJ and the BIA." Sol v. I.N.S., 274 F.3d 648, 651

---

Raspoutny was held under 8 U.S.C. § 1226(a), not 8 U.S.C. § 1226(c), which permits a bond hearing. Opp. at 1. Raspoutny has therefore withdrawn any arguments regarding the applicability of section 1226(c). See Pet. Reply at 5 n.1.

9

(2d Cir. 2001) (citations omitted).

As noted, Raspoutny alleges that his civil arrest at a courthouse violated the First Amendment, the Fifth Amendment, the common law privilege against civil arrest at a courthouse, the APA, a New York statute, and a 2021 DHS memorandum[5] relating to courthouse arrests. See Am. Pet. ¶ 3. Section 2241, however, permits the issuance of a writ of habeas corpus only when a person is in custody in violation of "the Constitution or laws" of the United States. 28 U.S.C. § 2241(c)(3). Petitioner gives no explanation as to how a New York statute, a "common law privilege of immunity from civil arrest in and around courthouses," Am. Pet. ¶ 39, or an internal agency memorandum constitute "laws" of the United States.[6] We thus do not address these arguments further and instead turn to the cited constitutional provisions and the APA.

As to the constitutional provisions, the only principle that seems to apply to petitioner's case is the right of "access to the courts." See Am. Pet. ¶ 38. Petitioner makes this clear in his reply brief where he cites to a case involving "a right of access to the courts." Pet. Reply at 18 (citing Doe v. U.S. Immigr. and Customs Enf't, 490 F. Supp. 3d 672, 695 (S.D.N.Y. 2020)). As the Second Circuit has explained, "[i]t is well established that all persons enjoy a constitutional right of access to the courts." Monsky v. Moraghan, 127 F.3d 243, 246 (2d Cir. 1997). Monsky

---

[5] See ICE & U.S. Customs and Border Protection, "Civil Immigration Enforcement Actions in or near Courthouses" (Apr. 27, 2021), https://www.cbp.gov/sites/default/files/assets/documents/2021-Apr/Enforcement-Actions-in-Courthouses-04-26-21.pdf [https://perma.cc/9VS6-R9MG] ("DHS Memo").

[6] Indeed, the internal memorandum specifically states that it is not intended to "to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter" and that it merely "provides management guidance to [agency] personnel exercising discretionary law enforcement functions." DHS Memo.

noted that "the source of this right has been variously located in the First Amendment right to petition for redress, the Privileges and Immunities Clause of Article IV, section 2, and the Due Process Clauses of the Fifth and Fourteenth Amendments." Id. "In order to establish a violation of a right of access to courts, a plaintiff must demonstrate that a defendant caused 'actual injury,' i.e., took or was responsible for actions that 'hindered [a plaintiff's] efforts to pursue a legal claim.'" Id. at 247 (internal citations omitted) (alterations in original) (quoting Lewis v. Casey, 518 U.S. 343, 351 (1996)); accord Doe, 490 F. Supp. 3d at 694. A right to access the courts claim "is ancillary to the underlying claim, without which a [petitioner] cannot have suffered injury by being shut out of court." Christopher v. Harbury, 536 U.S. 403, 415 (2002). Additionally, "the right of access to the courts has been interpreted to belong solely to litigants or those seeking to be litigants, and a plaintiff may state a claim for denial of access only if the defendant's actions hindered the pursuit of a legal claim." Posr v. Court Officer Shield No. 207, 180 F.3d 409, 414 (2d Cir. 1999) (denying an "access to the courts" claim where plaintiff was denied access to observe legal proceedings).

Here, there is no such injury. While Raspoutny claims that the arrest occurred in the "midst" of his efforts to access the courts, Am. Pet. ¶ 65, in fact the ICE agents "did not enter any courthouse or interact with any court personnel," Tedesco Decl. ¶ 20, but instead took custody of him "[a]t the conclusion of the court appearance," Am. Pet. ¶ 22. Indeed, Raspoutny was returned to state court for another hearing on September 23, 2022. Tedesco Decl. ¶ 23; Am. Pet. ¶ 27. Thus, Raspoutny was not denied the opportunity to "pursue a legal claim." Monsky, 27 F.3d at 247. Absent such an injury, the Court cannot find that Raspoutny was denied access to the courts.

For what it is worth, the principle that underlies the concerns about courthouse arrests — that fear of arrest at the courthouse may dissuade participation in court proceedings, see Doe, 490 F. Supp. 3d at 693 (explaining New York's common law privilege against civil arrests in a courthouse "evolved as a means to encourage parties, as well as witnesses, to appear in court voluntarily and to enable the proper, expeditious, and uninterrupted functioning of courts") — does not apply to Raspoutny's arrest. Raspoutny had been brought to court involuntarily at the time of the arrest, and thus the arrest did not interfere with his attendance at court. See generally Netograph Mfg. Co. v. Scrugham, 197 N.Y. 377, 380 (N.Y. 1910) ("Since the obvious reason of the rule is to encourage voluntary attendance upon courts and to expedite the administration of justice, that reason fails when a suitor or witness is brought into the jurisdiction of a court while under arrest or other compulsion of law.").

As for the claim under the APA, the APA permits review only of "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court."  5 U.S.C. § 704.  Petitioner points to no "statute" that permits "review[]" of the arrest. The arrest also does not fit into the second category — "final agency action for which there is no other adequate remedy in a court" — because the issuance of a writ of habeas corpus under 28 U.S.C. § 2241 would provide an adequate remedy were the Court to find Raspoutny's custody to be improper.  See Lucas v. Fed. Bureau of Prisons, 2018 WL 3038496, at *2 (S.D.N.Y. June 19, 2018) ("[B]ecause plaintiff could adequately remedy his conditions of confinement claim in a habeas corpus petition, the Court does not have jurisdiction to decide his APA claim."); see also Vetcher v. Sessions, 316 F. Supp. 3d 70, 78 (D.D.C. 2018) ("release from custody" is a "demand [] certainly cognizable through the writ of habeas corpus") (emphasis omitted) (citing Preiser v. Rodriguez, 411 U.S. 475 (1973)).

Accordingly, the Court rejects Raspoutny's argument that he is entitled to habeas corpus relief under section 2241 because of his arrest.

B. Bond Hearing

Having determined that Raspoutny has failed to show the circumstances of his arrest justify habeas relief, we next address whether a new bond hearing should be ordered where the Government is "required to prove the need for continued detention by clear and convincing evidence" based on the Due Process Clause of the Fifth Amendment, the INA, and the APA. Am. Pet. ¶ 5. The Government argues that Raspoutny is not entitled to such a hearing. See Opp. at 19-23. It also argues that because Raspoutny never appealed his bond hearing determination to the BIA, his petition cannot be heard because he has not exhausted his administrative remedies. Supp. Letter at 2. We address the exhaustion issue first.

1. Exhaustion

"Although 'there is no statutory requirement of administrative exhaustion before immigration detention may be challenged in federal court by a writ of habeas corpus,' courts generally do require such exhaustion 'as a prudential matter.'" Joseph v. Decker, 2018 WL 6075067, at *5 (S.D.N.Y. Nov. 21, 2018) (alterations omitted) (quoting Paz Nativi v. Shanahan, 2017 WL 281751, at *1 (S.D.N.Y. Jan. 23, 2017)); accord Quintanilla v. Decker, 2021 WL 707062, at *2 (S.D.N.Y. Feb. 22, 2021). The exhaustion requirement may be excused when: "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." Beharry v. Ashcroft, 329 F.3d 51, 62 (2d Cir. 2003) (citations omitted). With regard to futility, pursuing administrative remedies may be futile where "the administrative procedures do not provide an

13

adequate remedy," Cave v. E. Meadow Union Free Sch. Dist., 514 F.3d 240, 249 (2d Cir. 2008), or where "'the agency has predetermined the issue' before it," Monestime v. Reilly, 704 F. Supp. 2d 453, 456 (S.D.N.Y. 2010) (quoting Garcia v. Shanahan, 615 F. Supp. 2d 175, 180 (S.D.N.Y. 2009)).

Here, the Government argues that Raspoutny failed to appeal the IJ's bond determination to the BIA, and therefore, he has not exhausted his administrative remedies. See Supp. Letter at 2. However, the remedy Raspoutny seeks — a new bond hearing with the burden shifted to the Government — is "foreclosed at the BIA based on existing administrative precedent." Joseph, 2018 WL 6075067, at *6. "Forcing [petitioner] to endure a lengthy appeal process, the outcome of which is already known, would be an exercise in futility." B.S. v. Joyce, 2023 WL 1962808, at *3 (S.D.N.Y. Feb. 13, 2023). We thus agree with the many courts in this district that have found that exhaustion should not be required in the context of challenging the hearing's burden of proof. See id. (collecting cases); O.F.C. v. Decker, 2022 WL 4448728, at *4-8 (S.D.N.Y. Sept. 12, 2022); Quintanilla, 2021 WL 707062, at *2.

2. Due Process

Raspoutny argues "placing the burden on a detained person to justify his own right to release would violate his procedural due process rights." Am. Pet. ¶ 5. From both parties' perspective, the resolution of this question centers on the application of Velasco Lopez v. Decker, 978 F.3d 842 (2d Cir. 2020) to Raspoutny's case. See Pet. Reply at 20-21; Opp. at 20-22. The petitioner in Velasco Lopez was an alien present in the United States pursuant to the Deferred Action for Childhood Arrivals program whose renewal application under that program was denied. See id. at 846. Velasco Lopez was detained by ICE, held for three and a half months, and then was denied bond at a hearing where he "bore the burden of showing to the

14

satisfaction of the immigration judge that he was neither a flight risk nor dangerous." Id. at 847. Velasco Lopez was denied bond at a second hearing at which he again bore the burden of proof. Id. After a total of fourteen months in pre-removal detention, Velasco Lopez filed a habeas petition "challenging on due process grounds the procedures employed in his hearings." Id. at 487-88. The district court ordered "a new hearing at which the Government, not Velasco Lopez, was required to justify his continued incarceration by presenting clear and convincing evidence that he was either a flight risk or a danger to the community." Id.

To determine "whether Velasco Lopez's ongoing incarceration posed due process concerns at the time of his habeas filing and whether additional procedural protections then became necessary," 978 F.3d at 851, Velasco Lopez looked to the three-factor balancing test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). Velasco Lopez found that the petitioner had been denied due process based largely on the length of Velasco Lopez's detention, almost fifteen months, and the fact that he lacked any "administrative mechanism by which [he] could have challenged his detention on the ground that it reached an unreasonable length." Id. at 851-52.

Raspoutny argues that Velasco Lopez was in the context of "a second bond hearing after a period of prolonged detention," Pet. Reply at 20 (emphasis in original), and that the Second Circuit did not "overrule[] the 'overwhelming consensus' of courts," id. at 21 (quoting Banegas v. Decker, 2021 WL 1852000, at *3 (S.D.N.Y. May 7, 2021), finding that the burden fell on the Government at an initial bond hearing. Therefore, he argues, Velasco Lopez does "not directly" address the issue in the instant case. Pet. Reply at 20. The Government counters that "Velasco Lopez actually confirms that due process does not require the burden to be placed on the government during an initial § 1226(a) bond hearing." See Opp. at 20.

15

As the Court has previously stated, "Velasco Lopez did not articulate a broad rule that it is always a violation of due process for a detainee to bear the burden of proof at a § 1226(a) detention hearing." Huanga v. Decker, 599 F. Supp. 3d 131, 139 (S.D.N.Y. 2022). Rather, "Velasco Lopez looked to the three-factor balancing test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976), to determine 'whether Velasco Lopez's ongoing incarceration posed due process concerns at the time of his habeas filing and whether additional procedural protections then became necessary.'" Id. (quoting Velasco Lopez, 978 F.3d at 851). As we observed in Huanga:

> We believe that Velasco Lopez mandates that a court engage in Mathews balancing to determine whether a petitioner's procedural due process rights were violated by an initial hearing under § 1226(a) at which the petitioner bore the burden of proof. This approach is consistent with the holding of Velasco Lopez, which made clear that as the duration of detention increased, the petitioner's liberty interest became more compelling, see 978 F.3d at 852, and that it might eventually overcome any interest the Government had in continued detention, see id. at 853-54. This analysis can only be read to suggest that the inverse is also true: namely, that it may not be a violation of due process for an alien to bear the burden of proof at a hearing that takes place shortly after their initial detention, as happened here, and where a petition is filed after a relatively brief period. Significantly, Velasco Lopez explained in a footnote that "[t]his case does not require us to establish a bright-line rule for when due process entitles an individual detained under § 1226(a) to a new bond hearing with a shifted burden." Id. at 855 n.13.

599 F. Supp. 3d at 140-41. In the aftermath of Velasco Lopez, many courts have conducted a Mathews balancing test to resolve the issue of whether a new bond hearing should be ordered. See, e.g., P.M. v. Joyce, 2023 WL 2401458, at *4-5 (S.D.N.Y. Mar. 8, 2023); Jimenez, 2021 WL 826752, at *8-11; Huanga, 599 F. Supp. 3d at 140 (collecting cases). We will therefore assess Raspoutny's due process claim using the three-part balancing test set forth in Mathews, which requires that we evaluate (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the

16

probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335; accord Huanga, 599 F. Supp. 3d at 141.

We note that Raspoutny provided analysis of the Mathews factors for the first time in his reply brief. See Pet. Reply at 21-23. Because the Court wished to hear the Government's view on how such an analysis should be applied to Raspoutny's case, the Court issued an order that specifically directed the Government to respond to Raspoutny's new arguments. See Order, filed Sept. 13, 2023 (Docket # 30). While the Government filed a letter in response to this order, see Supp. Letter, the letter did not address the application of the Mathews factors.

As to the first factor of Mathews, the private interest at issue here is "the most significant liberty interest there is — the interest in being free from imprisonment." Velasco Lopez, 978 F.3d at 851. Raspoutny has been detained by ICE since May 8, 2023 — more than 7 months. Tedesco Decl. ¶ 26. Although the length of time already spent in detention is a major focus in the analysis of this issue, we also consider the potential length of time Raspoutny may be detained without the Government ever having to show Raspoutny's continued detention is justified. As the Second Circuit observed in Velasco Lopez, "[h]ad the district court not ordered a new hearing with a shifted burden, it is impossible to say how long Velasco Lopez's incarceration would have lasted." Velasco Lopez, 978 F.3d at 852. Raspoutny's case is unusual in this regard as he is a citizen of Ukraine. Am. Pet. ¶ 1. Citing to a news report, Raspoutny asserts that "ICE is not currently deporting Ukrainians due to the Russian invasion" and contends that "removal of Petitioner is not reasonably foreseeable in the near future even if he obtains a removal order." Pet. Reply at 22. These assertions have not been contradicted by the

17

Government notwithstanding its opportunity to do so. See Order, filed Sept. 13, 2023. We thus assume them to be true. See generally Doe v. Decker, 2021 WL 5112624, at *2 (S.D.N.Y. Nov. 3, 2021) ("Petitioner's allegations concerning the length and conditions of his detention are not opposed and therefore are accepted as true."). Because Raspoutny's detention will not just "continue pending the completion of appeals of the order of removal," Arana v. Decker, 2020 WL 7342833, at *5 (S.D.N.Y. Dec. 14, 2020), but may continue indefinitely in light of the war in Ukraine, Raspoutny's private interest weighs heavily in his favor.

As to erroneous deprivation, courts look to various factors including (1) whether the detention has interfered with pending criminal charges that form the basis of a dangerousness determination during the bond hearing, see Velasco Lopez, 978 F.3d at 852-53; Gonzalez Evangelista v. Decker, 2021 WL 101201, at *4 (S.D.N.Y. Jan. 12, 2021); (2) to what extent the bond hearing determination was premised on pending charges, see Arana, 2020 WL 7342833, at *5 ("[T]he mere fact of a charge that he may be able to resolve as a violation may not be sufficient to carry the Government's burden."); (3) whether the detention has interfered with a petitioner's ability to access counsel, see Jimenez, 2021 WL 826752, at *9; (4) the length of time a petitioner is detained, Velasco Lopez, 978 F.3d at 853-54; Fajardo v. Decker, 2022 WL 17414471, at *11 (S.D.N.Y. Dec. 5, 2022); and (5) what, if any, process has already been afforded, Cabrera Galdamez v. Mayorkas, 2023 WL 1777310, at *6 (S.D.N.Y. Feb. 6, 2023) ("Petitioner has been detained for sixteen months without an individualized hearing before an impartial adjudicator.").

While Raspoutny's detention does not involve many of these factors, courts have considered detentions "without an end in sight" as posing a risk of erroneous deprivation. See, e.g., Fajardo, 2022 WL 17414471, at *11 ("And with his petition for review pending with no

indication of when it will be resolved, [petitioner]'s detention continues without an end in sight . . . [creating] a meaningful risk of the erroneous deprivation. . . .") (internal quotation marks omitted).

As for the Government's interest, the Government certainly has a strong interest in "ensuring the appearance of aliens at future immigration proceedings" and "preventing danger to the community." Zadvydas v. Davis, 533 U.S. 678, 690 (2001) (alterations and citations omitted). But as to the interest of ensuring Raspoutny's appearance at removal proceedings, the Supreme Court has held that this "justification . . . is weak or nonexistent where removal seems a remote possibility at best." Zadvydas, 533 U.S. at 690; accord Yusov v. Shaughnessey, 671 F. Supp. 2d 523, 528 (S.D.N.Y. 2009) ("The Zadvydas Court then stated that if detention is no longer constitutional because the likelihood of removal is too remote, the proper alternative is supervision."). We note that the Government's interest also includes "[t]he prompt execution of removal orders . . ., which detention may facilitate." Hernandez-Lara v. Lyons, 10 F.4th 19, 32 (1st Cir. 2021). But if removal cannot be effectuated, this interest is of little importance.

Notwithstanding the Government's "significant interest in protecting the public's safety," Fajardo, 2022 WL 17414471, at *12, the Government is certainly able to present that interest at a hearing at which it bears the burden of proof — particularly here where Raspoutny has a lengthy criminal record including recent serious convictions. Balancing the Mathews factors, we find that Raspoutny's private interest is both "the most significant liberty interest there is," Velasco Lopez, 978 F.3d at 851, and is uniquely heightened by the indefinite suspension of deportations to Ukraine. Furthermore, there exists at least some risk of erroneous deprivation given the potential indefiniteness of Raspoutny's detention even after his removal proceedings are complete. The Government's interest is insufficient to outweigh the other interests, particularly

given its inability to remove Raspoutny in the short term.

Accordingly, Raspoutny is entitled to a new bond hearing with a shifted burden.

Conclusion

For the foregoing reasons, within 30 days of this Opinion and Order, the respondents shall take Raspoutny before an Immigration Judge for an individualized bond hearing at which the Government bears the burden of proving by clear and convincing evidence that Raspoutny is either a flight risk or a danger to the community. Should respondents fail to provide Raspoutny with such a hearing within 30 days, the respondents shall immediately release Raspoutny from their custody.[7]

SO ORDERED.

Dated: New York, New York
December 22, 2023

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

---

[7] If more time is needed to prepare for the hearing on account of the upcoming holidays, the Government may make an application for a brief extension.